**Supreme Court**

No. 2015-332-Appeal.
(PC 15-928)

Paul E. Pontarelli                        :

v.                        :

Rhode Island Board Council on Elementary      :
and Secondary Education et al.


NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Paul E. Pontarelli             :

v.                             :

Rhode Island Board Council on Elementary    :
and Secondary Education et al.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The plaintiff, Paul E. Pontarelli, appeals from a Superior Court judgment in favor of the defendants, the Rhode Island Board Council on Elementary and Secondary Education (the council) and the Rhode Island Department of Elementary and Secondary Education (RIDE) (collectively, defendants).  The plaintiff, an attorney who is employed as a hearing officer for RIDE, alleged that the defendants violated the Open Meetings Act (OMA), as set forth in G.L. 1956 chapter 46 of title 42, by failing to provide adequate notice of a September 8, 2014, council meeting and for its failure to provide any notice of meetings held by the Compensation Review Committee.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we reverse in part and affirm in part the judgment of the Superior Court.

# I

## Facts and Procedural History

### A

### The Compensation Review Committee

The pertinent facts in this case are not in dispute.  In 2011 or 2012 the council created a Compensation Review Committee (CRC), which was to convene to review requested and proposed salary adjustments for RIDE employees.  The CRC is composed of six RIDE employees: the three division chiefs, the chief of staff, the human resources coordinator, and the deputy commissioner.  David Abbott, the deputy commissioner of RIDE and a CRC member, serves as the CRC chairperson.  Abbott explained at deposition that membership on the CRC is not by appointment; instead, serving on the CRC is "just an additional task for people that are on the leadership team."  He described the CRC as an "informal, ad hoc working group with a strictly advisory role" and with no legal status or authority.  Abbott also explained that the CRC does not have regular meetings; rather, it schedules meetings when a CRC member requests one.  He attested that notice of the CRC meetings is not provided to the public nor are written minutes kept or taken at CRC meetings.  In 2013, the CRC created a charter to set up procedures on how it would operate as a committee.

According to Abbott, the CRC is a working group formed to provide "balance" or consistency in compensation for RIDE positions and to keep the three RIDE division chiefs informed about compensation requests.  Instead of individual division chiefs making compensation recommendations for their employees directly to the commissioner, the requests

go to the CRC, which then passes the request on to the commissioner.[1]   Although the CRC initially discussed compensation for RIDE's 146 public employees and new hires, it eventually "broaden[ed] the scope of what [they] were talking about" to also include organization.   The CRC began reviewing the creation of new positions in RIDE and the work each division or office should oversee.   Because only the commissioner has the actual authority to take personnel actions, the CRC is "strictly advisory" and handles all personnel matters outside the scope of the human resources department.[2]

**B**

**Notice of the September 8, 2014 Council Meeting**

The council posted notice of a September 8, 2014, council meeting on the Rhode Island Secretary of State's website (the council meeting).   As required by G.L. 1956 § 16-60-7(b), RIDE's table of organization, together with pay ranges, needed to be approved by the council.[3]   Under the "Action Items" subheading of the agenda notice, item "7.b." stated: "Approval of RIDE's Executive Pay Plan and Organizational Chart."   Several spaces to the right of this item description, "Enclosure 7b" was noted.   However, the 7b enclosure was not accessible from the Secretary of State's website.   The 7b enclosure was a memorandum containing a recommendation from the commissioner of RIDE to the council that the council "approve[] the attached Executive Pay Plan for [fiscal years] 2012, * * * 2013, * * * 2014, * * * 2015 and the Organizational Chart."   Attached to the recommendation were the proposed retrospective

---

[1] In October 2012, the CRC deferred action on a pay-grade salary adjustment submitted by plaintiff.

[2] For example, matters relating to disciplinary action, termination, and medical leave would not go to the CRC.

[3] General Laws 1956 § 16-60-7(b) provides that "The table of organization, as submitted by the commissioner of elementary and secondary education, together with the pay ranges, shall be subject to approval by the board of regents [now the council]."

executive pay plans. The agenda notice for the council meeting was also posted on RIDE's website, where the 7b enclosure was accessible. The plaintiff acknowledged that approximately two weeks prior to the September 8, 2014 meeting, he received a copy of the 7b enclosure.

The council meeting was held on September 8, 2014, at which time the council considered and approved the four executive pay plans for fiscal years 2012, 2013, 2014, and 2015 that had been proposed by RIDE.

## C

### Superior Court Proceedings

On March 6, 2015, plaintiff filed a two-count complaint against defendants. The plaintiff alleged in his complaint that the agenda notice "posted by the [c]ouncil for its September 8, 2014 meeting did not provide adequate and proper notice of its action with regard to executive pay plans" and that its consideration and approval of the pay plans violated the OMA (count 1). The plaintiff also alleged that, because the CRC, as a designated committee of RIDE, was a "public body" pursuant to the OMA, RIDE violated the OMA by failing to provide notice or keep and file written minutes of CRC meetings (count 2). In response, on April 7, 2015, defendants filed a joint motion to dismiss pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure.

The plaintiff objected to the motion to dismiss and filed a motion for summary judgment. The Superior Court treated both parties' motions as cross-motions for summary judgment, and a hearing was held on June 5, 2015. At the hearing, defendants argued that plaintiff did not have standing to raise his claims. The defendants argued that, because plaintiff had received the 7b enclosure two weeks prior to the council hearing, plaintiff could not be an "aggrieved party" under count 1, and because plaintiff failed to allege how he was injured by the CRC's meetings, he also did not have standing to pursue count 2. In response, and in addition to contending that

- 4 -

he did in fact have standing, plaintiff argued that the agenda notice provided by the council was not sufficient because it did not inform the public that more than one pay plan year would be discussed at the meeting. Moreover, plaintiff argued that the OMA covers advisory groups like the CRC and that, consequently, the CRC was required to give notice of its meetings and publish minutes pursuant to the OMA.

At the close of the parties' arguments, the hearing justice issued a bench decision granting defendants' motion for summary judgment. In doing so, the hearing justice did not decide the issue of standing, although he found that "clearly * * * plaintiff had adequate notice because [plaintiff] actually had the [7b] attachment." Instead, the hearing justice found, "in reviewing the totality of the circumstances in this case," that the notice of the September 8, 2014 meeting complied with the OMA because it sufficiently "specifie[d] the nature of the business to be discussed" at the council meeting. The hearing justice also found that the CRC was not a public body and, accordingly, was not subject to the OMA.

Final judgment entered for defendants on June 23, 2015. The plaintiff subsequently filed a timely notice of appeal.

## II

### Standard of Review

"This Court examines an appeal from cross-motions for summary judgment <u>de novo</u>." <u>5750 Post Road Medical Offices, LLC v. East Greenwich Fire District</u>, 138 A.3d 163, 166 (R.I. 2016) (quoting <u>Medical Malpractice Joint Underwriting Association of Rhode Island v. Charlesgate Nursing Center, L.P.</u>, 115 A.3d 998, 1002 (R.I. 2015)). "In reviewing the Superior Court's judgment on the parties' motions for summary judgment, we * * * apply the same standards as those used by the trial court." <u>Id.</u> (quoting <u>Charlesgate Nursing Center, L.P.</u>, 115 A.3d at 1002). "Thus, [s]ummary judgment is appropriate when, viewing the facts and all

reasonable inferences therefrom in the light most favorable to the nonmoving party, the [C]ourt determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Id. at 166-67 (quoting Charlesgate Nursing Center, L.P., 115 A.3d at 1002).

### III

### Discussion

### A

### Notice of the September 8, 2014 Council Meeting

On appeal, plaintiff contends that the hearing justice erred in granting summary judgment to defendants as it relates to count 1. The plaintiff argues that "[t]he [c]ouncil's [a]genda item noticing the 'approval of RIDE's Executive Pay Plan' failed to fairly inform the public that it was actually seeking approval for multiple executive pay plans for four years going back to 2012[,] and [that] the Superior Court erred by determining the [a]genda item complied with the OMA." Specifically, plaintiff highlights that the term "plan" was singular in the notice and did not reference plans (in the plural). Additionally, plaintiff contends that defendants' acknowledgment that the agenda item 7b attachment was not posted on the Secretary of State's website establishes that "[d]efendants * * * indisputably failed to comply with Rule 5A and are in violation of the OMA." Therefore, plaintiff argues that anyone who accessed the Secretary of State's website would be able to see only the agenda item: "Approval of Ride's Executive Pay Plan and Organizational Chart," "not the enclosure, which would have (but did not) advise of multiple pay plans being discussed."

In response, defendants argue that the Superior Court was correct in finding that the council's posted agenda of the September 8, 2014 meeting satisfied the requirements of the

OMA. The defendants argue that based on the totality of the circumstances of this case, the public was fairly informed of the matters that would be discussed at the council meeting.

Pursuant to the OMA, public bodies are required to "give written notice of their regularly scheduled meetings at the beginning of each calendar year" and are also required to "give supplemental written public notice of any meeting within a minimum of forty-eight (48) hours before the date." Section 42-46-6(a),(b). The OMA provides that supplemental "notice shall include the date the notice was posted, the date, time and place of the meeting, and a statement specifying the nature of the business to be discussed." Section 42-46-6(b). The OMA requires that all notices of a public meeting be "electronically transmitted to the [S]ecretary of [S]tate in accordance with rules and regulations which shall be promulgated by the [S]ecretary of [S]tate." Section 42-46-6(f). Rule 5A.2.b. of the Rules and Regulations Adopted by the Secretary of State provides in relevant part that "[s]upplemental written public notices and all addenda and amendments must be filed with the Secretary of State electronically at least forty-eight (48) hours in advance of [a] meeting."

Determining whether there was a violation of the OMA is a mixed question of fact and law as to which this Court normally gives deference to the factual findings of the trial justice. Anolik v. Zoning Board of Review of Newport, 64 A.3d 1171, 1174 (R.I. 2013). However, where the material facts are not in dispute, as is true in this case, this Court reviews the matter de novo. Id. "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Id. (quoting Olamuyiwa v. Zebra Atlantek, Inc., 45 A.3d 527, 534 (R.I. 2012)).

In applying the language of § 42-46-6(a), this Court has stated that the content of a notice providing "the nature of the business to be discussed" is a flexible standard based on the totality

of the circumstances. Anolik, 64 A.3d at 1175. We have explicitly declined to set "specific guidelines, or 'magic words,'" necessary to meet the notice requirement set forth in § 42-46-6(a). Anolik, 64 A.3d at 1175 (quoting Tanner v. Town Council of East Greenwich, 880 A.2d 784, 797 (R.I. 2005)). Instead, we have held that the public body, here the council, must provide "fair notice" of what will be discussed at a meeting. Anolik, 64 A.3d at 1175. Accordingly, this Court's "task is to determine whether the notice provided by the * * * council fairly informed the public, under the totality of the circumstances, of the nature of the business to be conducted" at the September 8, 2014 council meeting. See Tanner, 880 A.2d at 797.

After a careful review of the record and consideration of the undisputed facts before us, it is this Court's opinion that the agenda provided by defendants, as it relates to the September 8, 2014 meeting, falls short of satisfying the statutory requirements of notice set forth in § 42-46-6(a). Although the notice placed on the Secretary of State's website undeniably informed the public that "[a]pproval of RIDE's Executive Pay Plan" was on the agenda for the council meeting, there was no indication that more than one pay plan would be considered. Moreover, there was also no indication that the additional pay plans (ultimately considered and decided by the council at the meeting) would relate to retrospective fiscal years dating back to 2012. Additionally, while the 7b enclosure that should have been attached would have informed the public that the meeting would involve pay plans from fiscal year 2012 and forward, it is undisputed that the enclosure was not available on the Secretary of State's website as required by § 42-46-6.[4]

---

[4] The "Enclosure 7b" being accessible on RIDE's website is irrelevant to our analysis, as G.L. 1956 § 42-46-6 requires that it be placed on the Secretary of State's website, and there is no duty placed upon the public to search elsewhere.

It is our opinion that based on the totality of the circumstances of this case—including that the term "plan" was in the singular and that the stated "Enclosure 7b" was not actually available on the Secretary of State's website—adequate public notice was lacking. The public had the statutory right to receive a more complete notice of what would be discussed and decided at the council meeting; this is especially true where the matters relate to expenditures of tax-payer monies. The agenda did not provide the public with fair notice "of the nature of the business to be discussed" where it completely omitted any information that one could construe to mean that more than one pay plan would be discussed. See Anolik, 64 A.3d at 1175 (holding that the term "[c]ommunications" in an agenda "could quite rationally cause a member of the public to infer simply that the zoning board was informing the citizenry that it had 'received' a request * * * but the text provide[d] no basis for any further inference as to what might happen with respect to the request that had been 'received'").

Accordingly, we conclude that defendants violated the OMA by their failure to provide adequate notice of the September 8, 2014 meeting.[5] This Court reverses summary judgment in defendants' favor on count 1 and remands this case to the Superior Court with instructions to

---

[5] We note that defendants' argument that plaintiff lacked standing to bring these claims forward was raised before the Superior Court but was not ultimately decided by the hearing justice. Before this Court, defendants sought to argue standing at oral argument and expressed an understanding that the issue had been raised in their written submissions. After a careful review of their filings, it is clear that defendants have not properly raised their standing argument to this Court. The only mention of standing is found in a footnote, which states that the Superior Court "did not need to reach defendants' claims * * * that plaintiff lacked standing." There is no further discussion or argument regarding the issue. Accordingly, such argument is deemed waived. See Duffy v. Milder, 896 A.2d 27, 39-40 (R.I. 2006) (this Court considered waived the issue of whether the plaintiff had standing where there was no indication in the record that the issue was decided by the hearing justice and where the defendant did not raise the issue of standing on appeal).

enter judgment in plaintiff's favor and for a hearing to be held to determine the proper remedy pursuant to § 42-46-8.[6]

## B

## CRC as "Public Body"

Next, plaintiff argues that the Superior Court erred in determining that the CRC is not a "public body" as defined by the OMA and, as a result, is not subject to the provisions of notice set forth in the OMA. In response, defendants argue that the Superior Court was correct in finding that the CRC was not a public body and not subject to the OMA.

The OMA was enacted to ensure that "public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy." Section 42-46-1. The OMA requires, with some exceptions not pertinent to this appeal, that "[e]very meeting of all public bodies * * * be open to the public." Section 42-46-3. This Court has held that the act "should be construed broadly and interpreted in a light favorable to public access." Solas v. Emergency Hiring Council of the State, 774 A.2d 820, 824 (R.I. 2001).

Pursuant to the OMA, a "[p]ublic body," in relevant part, is defined as "any department, agency, commission, committee, board, council, bureau, or authority or any subdivision thereof of state or municipal government * * *." Section 42-46-2(3). This Court has held that "[a] literal reading of the [OMA] demonstrates that all meetings to discuss or act upon matters[,] over which

---

[6] Section 42-46-8(d) provides, in relevant part, that "[t]he court shall award reasonable attorney fees and costs to a prevailing plaintiff * * * except where special circumstances would render such an award unjust." Section 42-46-8(d) also provides other discretionary remedies the court may award.

- 10 -

the council has supervision, control, or advisory power, are required to be open to the public." Solas, 774 A.2d at 825.

In Solas, 774 A.3d at 825, this Court held that the OMA was implicated because the emergency hiring council (EHC) was a public body. The EHC had been created by executive order of the governor, and the EHC had supervisory and advisory authority. Id. at 823-24. The EHC controlled the state's hiring practices and its fiscal resources, and it was required to make suggestions to the governor relating to the state's personnel system. Id. at 823, 824. The EHC also "was required to meet at least biweekly" and was composed of a group of high-level state officials. Id. at 824, 825. This Court noted that the EHC's advisory power over the matter to be discussed at a meeting alone required that the meeting be open to the public. Id. at 825.

Here, it is our opinion that the CRC does not constitute a public body and is not therefore subject to the regulations of the OMA. Unlike the EHC in Solas, the CRC in this case does not meet on a regular basis, nor was the CRC created by an executive order. Instead, the undisputed evidence in this case is that the CRC acted as an informal, strictly advisory committee. Although the CRC was composed of a group of high-level state officials and operated under a charter, these two factors alone are insufficient to place them into the "public body" umbrella. Importantly, the CRC's sole function is to advise the commissioner of RIDE, who in turn has to make a recommendation to the council. At this point in the process, if the commissioner decided to present any proposal to the council for the council's required approval, the public would have an opportunity to be informed of and object to such proposal.

Based on the specific facts before this Court, it is our opinion that the CRC is not a "public body" and, consequently, is not subject to (nor was it in violation of) the OMA. Accordingly, we affirm the judgment in favor of the defendants as it relates to count 2.

- 11 -

# IV

## Conclusion

For the reasons stated herein, we reverse in part and affirm in part the judgment of the Superior Court. The record shall be returned to the Superior Court for further proceedings consistent with this opinion.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      Paul E. Pontarelli v. Rhode Island Board Council on Elementary and Secondary Education et al.

**CASE NO:**      No. 2015-332-Appeal.
(PC 15-928)

**COURT:**      Supreme Court

**DATE OPINION FILED:**      December 21, 2016

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**      Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Richard A. Licht

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Michael J. Jacobs, Esq.
                Jeffrey D. Sowa, Esq.

For Defendants:  Anthony F. Cottone, Esq.
                 Paul V. Sullivan, Esq.